IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SERVICE EMPLOYEES                )
INTERNATIONAL UNION, LOCAL 3,    )
et al.,                          )
                                 )
            Plaintiffs,           )
      v.                          )  Civil Action No. 04-0067
                                 )
INDEPENDENCE MANAGEMENT           )
COMPANY, INC., INDEPENDENCE        )
ENTERPRISES, INC. and CENTRE      )
CITY PARTNERS, L.P.,              )
                                 )
            Defendants.           )

MEMORANDUM AND ORDER

Gary L. Lancaster,
District Judge.                                    December 16, 2005

            This is an action alleging violations of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §1140, and

the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185.

Plaintiffs, Service Employees International Union ("SEIU"), and

nine individuals who are members of Local 3 (collectively

"plaintiffs"), allege that defendants, Independence Management

Company, Inc., Independence Enterprises, Inc. and Center City

Partners, L.P. (collectively "defendants") intentionally

interfered with plaintiffs' healthcare benefits and collective

bargaining agreement.

            In Count I, plaintiffs allege that defendants violated

section 510 of ERISA, by intentionally interfering with their health care benefits when defendants chose not to renew their contract with plaintiffs' employer, St. Moritz Building Service, Inc. ("BSI"). In Count III,[1] plaintiffs allege that defendants violated section 301 of the LMRA, by tortiously interfering with a collective bargaining agreement between plaintiffs and BSI. Plaintiffs seek compensatory damages and injunctive relief.

Defendants have filed a motion for summary judgment under Fed.R.Civ.P. 56(c), arguing that plaintiffs cannot demonstrate an ERISA or LMRA violation. Defendants argue that plaintiffs' ERISA claim must fail because they cannot establish that defendants engaged in "prohibited employer conduct." Defendants further argue that plaintiffs cannot show that defendants' specifically intended to violate ERISA. As to plaintiffs' claim for tortious interference in violation of the LMRA, defendants argue that plaintiffs cannot demonstrate that defendants purposely intended to harm the existing contractual relationship between plaintiffs and BSI. For the reasons that follow, defendants' motion will be granted.

I. BACKGROUND

Except where indicated, the following material facts

_____

[1]     Plaintiffs have withdrawn Count II of their Complaint, a section 510 ERISA cause of action concerning intentional interference with pension benefits.

2

are undisputed.

At all relevant times, plaintiffs were employees of BSI. The Local 3 SEIU is the union that represents the BSI employees. Beginning in 1990, BSI contracted with defendants to provide cleaning services at Centre City Towers. Under a series of contracts between BSI and defendants, BSI employed the cleaners working at Centre City Towers.

On December 31, 2003, the cleaning services contract between BSI and defendants expired. Defendants chose not to renew their contract with BSI, and instead, hired a non-union company to provide cleaning services at Centre City Towers. Defendants notified BSI of their decision not to renew their contract on December 23, 2003, and on December 29, 2003, BSI instructed its employees to vacate the building. The nine individual plaintiffs were laid off following defendants' non-renewal of their contract with BSI.

Plaintiffs claim that defendants' termination of their services was an intentional interference with the plaintiffs' rights to healthcare benefits they had become entitled to under the collective bargaining agreement between SEUI and the Managers Owners and Contractors Association ("MOCA").

II. STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment

3

may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (internal quotation marks omitted).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. at 247-48. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. Id. at 248. Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id.

III. DISCUSSION

It is on the standard discussed above that the court has reviewed defendants' motion and plaintiffs' response thereto. Based on the pleadings and evidence of record, the arguments of

4

counsel, and the briefs filed in support and opposition thereto, the court concludes, as a matter of law, that there are no genuine disputes over any material fact. Further, summary judgment will be granted in favor of defendants.

A. Count I: Intentional Interference with Healthcare Benefits in Violation of Section 510 of ERISA

The thrust of plaintiffs' claim is that, by not renewing the contract with BSI, defendants intentionally interfered with BSI's employees' attainment of their healthcare benefits. Section 510 of ERISA protects against interference with protected rights by providing, in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provision of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]

29 U.S.C. § 1140. Thus, section 510 prohibits interference with an employee's attainment of medical or disability benefits, as well as the more traditional pension benefits. See generally Blaw-Knox Retirement Income Plan v. White Consol. Indus., Inc., 998 F.2d 1185, 1191 (3d Cir. 1993). To establish a prima facie case under ERISA § 510, "an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any pension right to which

5

the employee may become entitled." Gavalik v. Continental Can Co., 812 F.2d 834, 852 (3d Cir.), cert. denied, 484 U.S. 979 (1987). "The essential element of proof under section 510 is specific intent to engage in proscribed activity." Gavalik, id. at 851. Because proof of specific intent to interfere with an employee's pension benefits will rarely be proved by direct evidence, the plaintiff may establish a violation of section 510 through the introduction of circumstantial evidence.

        In Gavalik, the Court of Appeals held that in ERISA discrimination cases, like employment discrimination claims under Title VII, 42 U.S.C. § 2000e, the shifting burdens analysis established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), should apply. Consequently, plaintiff has the initial burden of establishing a prima facie case by a preponderance of the evidence. Once plaintiff has done so, a presumption of discriminatory intent arises and the burden of production shifts to the employer to introduce "admissible evidence of a legitimate nondiscriminatory reason for its challenged actions." Gavalik, 812 F.2d at 853. If the employer meets its burden of production and produces evidence of a legitimate nondiscriminatory reason for its action, "the presumption drops from the case and the [plaintiff] is afforded the opportunity to demonstrate that the

6

employer's articulated reason is pretextual. . . ." Id.

In their motion for summary judgment, defendants argue that because they were not plaintiffs' employer, plaintiffs cannot demonstrate prohibited *employer* conduct - the first prong of a section 510 ERISA violation. Plaintiffs counter that the statute references unlawful conduct by "any person," and does not specifically require *employer* misconduct. Plaintiffs have failed to cite any authority for their position.

Relying on Gavalik and Fischer v. Philadelphia Elec. Co., 96 F.3d 1533 (3d Cir. 1996), defendants argue that the Court of Appeals has indicated that an employee-employer relationship is necessary for a section 510 violation. As set forth above, in Gavalik, when addressing the requirements for a prima facie case under ERISA §510, the court specifically stated that an employee must demonstrate "prohibited employer conduct." Gavalik, 812 F.2d at 852. "We have stated that Congress enacted section 510 primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension benefits.'" Id. at 851. Similarly, in Fischer, the court stated that, "under the law of this circuit, suits for discrimination under §510 claims are limited to actions affecting the employer-employee relationship." Fischer, 96 F.3d at 1543.

The Court of Appeals has consistently focused on the

7

necessary "employer-employee" relationship in its analysis of ERISA §510 claims. We agree that plaintiffs must demonstrate "prohibited employer conduct" in order to sustain a claim under Section 510. The record is clear that plaintiffs were employed by BSI - not defendants. Because plaintiffs were not employees of defendants, plaintiffs cannot demonstrate "prohibited employer conduct." As such, no genuine issue of material fact exists as to whether plaintiffs were employees of the defendant pursuant to section 510, and summary judgment is granted as to Count I.

Even assuming arguendo that plaintiffs could satisfy the first prong of an ERISA §510 inquiry, plaintiffs' claim would still fail because they have not offered any evidence to demonstrate that defendants' decision not to renew their contract with BSI was taken "for the purpose of interfering with the attainment of any pension right to which the employee may become entitled." See Gavalik, 812 F.2d at 852. To the contrary, the record is void of any evidence that defendants' decision to terminate its relationship with BSI at the end of the contract term (December 31, 2003) was an intentional effort to deprive or interfere with plaintiffs' benefits. Where as here, defendants were in a contractual relationship with BSI - not plaintiffs - defendants could not directly hire, fire or otherwise "interfere" with plaintiffs' employment or right to benefits. For example,

both parties admit in their statements of undisputed facts for summary judgment that BSI never notified defendants whether any of BSI's employees, including the individual plaintiffs, had family or single coverage for health insurance; nor did BSI provide defendants with a breakdown for wages or health benefits of BSI's employees. See Defendants' Statement ¶37, Plaintiffs' Statement ¶37.

In addition, defendants have cited several reasons, including dissatisfaction with BSI's cleaning services and lower bids from competitors, for their business decision not to renew the contract with BSI. Neither party disputes that a third party, P.F. Enterprise, submitted a bid for the 2004 Centre City Towers cleaning contract that was considerably lower than figures received from BSI and another cleaning company. See Defendants' Statement ¶26, Plaintiffs' Statement ¶26. We find it reasonable to conclude that defendants made a business decision, and that any desire to preclude BSI's employees from obtaining their healthcare benefits was not central to defendants' decision not to renew their contract with BSI. See Schweitzer v. Teamsters Local 100, 413 F.3d 533, 534 (6th Cir. 2005).

As such, we find that no genuine issue of material fact exists as to whether defendants' specifically intended to engage in the proscribed activity set forth in section 510.

9

B.  Count III:  Tortious Interference with a Collective
    Bargaining Agreement in Violation of Section 301 of the
    LMRA

        By the same token, plaintiffs' claim for tortious

interference also fails to demonstrate the requisite specific

intent by defendants to harm the collective bargaining agreement

between BSI and plaintiffs.

        In  order  to  succeed  on  a  claim  for  tortious

interference under section 301, plaintiffs must demonstrate:  (1)

the existence of a contractual relation between the complainant

and a third-party; (2) purposeful action on the part of the

defendant,  specifically  intended  to  harm  the  existing

relationship; (3) the absence of privilege or justification on

the part of defendant; and (4) the occasioning of actual legal

damage as a result of the defendant's conduct.  Reading Radio,

Inc. v. Fink, 833 A.2d 199, 211 (Pa. Super. 2003).

        In this case, a contract existed between plaintiffs and

BSI, a third party.  Pursuant to the collective bargaining

agreement between SEIU and MOCA, plaintiffs were entitled to

healthcare benefits paid for by their employer.[2]  Thus, the first

---

[2]    We note that defendants were signatories to the
       SEIU/MOCA agreement, which covered the individual
       plaintiffs' employment with BSI, however, as members of
       MOCA, defendants were parties to the MOCA agreement
       only to the extent it applied to defendants' own
       mechanic employees.  See Defendants' Statement ¶39,
       Plaintiffs' Statement ¶39.  Indeed, the SEIU/MOCA

element is satisfied.

Defendants argue that summary judgment is appropriate because plaintiffs cannot satisfy the second or third elements necessary for a tortious interference claim. Specifically, defendants contend that under their 2002-2003 cleaning contract with BSI, defendants were expressly excluded from any role in the employment relationship between plaintiffs and BSI. As such, defendants had no control over the terms of plaintiffs' employment with BSI.

We agree that the record does not set forth any evidence that defendants specifically intended to harm the relationship between plaintiffs and BSI created by the collective bargaining agreement. Neither party disputes that the cleaning contract for Centre City Towers between BSI and defendants expired by its terms on December 31, 2003. Plaintiffs have not demonstrated that defendants' non-renewal of the cleaning contract was done for the specific purpose of harming the employment relationship between plaintiffs and their employer, BSI. In other words, there is no evidence that defendants' decision not to renew its contract with BSI was intended to result in plaintiffs' termination by BSI or subsequent loss of

---

agreement lists the individual plaintiffs as employees of BSI, which is also a member of MOCA. Id. at ¶¶40.

healthcare benefits. Because BSI was plaintiffs' sole employer, BSI controlled whether the individual plaintiffs would remain under its employ and continue to receive health benefits after the non-renewal of the Centre City Towers contract.

Because plaintiffs cannot demonstrate the second element of purposeful action by defendants intending to harm the existing relationship between plaintiffs and BSI, summary judgment is appropriate as to Count III.

Accordingly, this 16th day of December, 2005, upon consideration of defendants' motion for summary judgment, IT IS HEREBY ORDERED that defendants' motion [document #15] is GRANTED, and the Clerk of Courts is directed to mark the case closed.

BY THE COURT:

cc: All Counsel of Record

12